# State, *ex rel.* Harrell, *v.* The Mobile and Montgomery Railway Company.

*Mandamus.*

1. *An application for a writ of mandamus must state specifically what is required.*—*Mandamus* commands the performance of specific acts; and if not performed as ordered, the court treats the refusal as a contempt and punishes the disobedience as such—consequently, the party commanded

[State, ex. rel. Harrell, v. M. &. M. Railway Co.]

must be informed what he is required to do in terms so specific that he can know the precise duty exacted of him.

2. *The averment in such an application must be certain.*—An averment in a petition for a *mandamus* that the relator tendered "bales of lint cotton," without specifying the number of bales is indefinite and fatally defective. The number of bales should have been so stated that the court could have ordered the railway to do a specific thing.

3. *When another remedy exists, a mandamus will not be granted.*—Section 1698 of the Code of 1876, affords ample, if not generous redress to every one who suffers from excessive charges by a railroad company, and consequently, under the authorities, the *mandamus* in this case must be denied.

APPEAL from the Circuit Court of Butler.
Tried before the Hon JOHN K. HENRY.
The facts are contained in the opinion.

L. D. BROOKS, for petitioner.—1. If the mandate of the court, as was strongly intimated, must be limited necessarily to some particularly described article of freight, and can not be extended to the performance of a continuous like duty to appellants as a remedy in this class of cases, it is simply worthless, and I think contrary to the fundamental principles established in the following cases :—29 Conn. 538 ; 2 Barn. & Ald. 644 ; 1 Otto, 91 ; 5 Heisk. (Tenn.) 125 ; 37 Ind. 489 ; 3 Harr. 312 ; High, Ex. Rem. §§ 315–17, 319–20 and 22.

2. What remedy will bar the right to relief by *mandamus ?* High, Ex. Rem. §§ 17, 18, 35, 210 and 415 ; 19 Mich. 392 ; 82 Penn. 275 ; 24 Mich. 468 ; 29 Ill. 421–22 ; 45 Mo. 294.

3. Is the existence of a statute for the enforcement of a right by any specified remedy, a bar to any other remedy for its enforcement, as applied to extraordinary remedies ? The very reverse is the rule when the remedy provided is inadequate by reason of the necessity of a multiplicity of suits, if the remedy under the statute is pursued, or for any other reason.—High, Ex. Rem. §§ 5, 6 ; 9 Johns. 506.

STONE, J.—The grievance complained of in the present petition is, that the Mobile and Montgomery Railway Company refused to transport local freight, tendered by the relator, at a rate of fifty per cent. more than the rate charged for transporting the same description of freight over the whole line of its road. See act "regulating the charges for transportation of freight upon railroads within this State," approved April 19th, 1873—Pamp. Acts, page 62. The complaint charges "that relator tendered respondent at its depot in the city of Greenville, bales of lint cotton for transportation to the city of Mobile, and at the same time of said

tender, relator also tendered and offered to pay respondent one and 45-100 dollars per bale for the transportation of the same as aforesaid." The petition had previously shown the price or rate charged by said railway company for transportation of bales of lint cotton over the whole line of its railway, and that the sum tendered was at the rate of fifty per cent. more, for transporting cotton from Greenville to Mobile; such transportation being conceded to be local freight.

The averment in the petition, that relator tendered "bales of lint cotton," without specifying the number of bales, is fatally indefinite and defective. The number of bales should have been specified, so that the court, in awarding the writ, could have commanded the railway company to do a specific thing. *Mandamus* is "directed to any natural person, corporotion, or inferior court of judicature within its jurisdiction, requiring them to do some particular thing therein specified, and which appertains to their office or duty."—3 Black. Com. 110; Bouv. Law Dict. The averment in the present petition is so indefinite that the court could not require the corporation to do a *particular thing*. *Mandamus* compels the performance of specific acts; and if not performed as ordered, the court treats the refusal as a contempt, and punishes the disobedience as such. The party commanded must be informed what he is required to do, in terms so specific, that he can know the precise duty required of him, and the extent of it; and the court must be able to determine with certainty, when its mandate is obeyed, or disregarded. An order to receive and transport *bales of cotton*, without specifying any number, could be easily evaded, and would be too indeterminate as a rule of action, or predicate of judicial proceeding.

We feel it our duty, however, to determine the more important question of the relator's right to *mandamus*, if the petition were correct, and sufficiently specified the duty it avers the railway company disregarded.

We have been referred to several adjudged cases, which are relied on in support of the present proceeding. The one nearest in point is *Mobile and Ohio Railroad Company v. Wisdam*, 5 Heisk. 125. In that case the right asserted is not distinguishable from the one claimed in this case, if the relator's construction of our statute is the correct one. The duty claimed of the railroad in that case, was of a class with the duty demanded in the present proceeding. But they had no statute giving a specific remedy at law. An action on the case for the recovery of damages—the common law action—

[State, ex rel. Harrell, v. M. & M. Railway Co.]

was the only remedy their law afforded him. Chief-Justice NICHOLSON, in delivering the opinion of the court, cited no authorities in support of his ruling, except the general doctrine on the subject of *mandamus*. Among other things he said, "in the case before us, the legal right is clear, the obligation created by the general statute, and the acceptance of its provisions and benefits by the company, is obvious, and the withholding of the right is illegal and unjust. It is equally obvious that there is no specific adequate remedy provided by the law which created the right and the obligation."

In another place he had said, "the company say, we are bound to receive your tax receipt for a ticket, but we choose to require you to pay the money, and you can sue us for damages for violating our contract; when you get your money, that will be equivalent to your tax receipt, and you can then buy a ticket to Mobile. It is far from being clear that the remedy by action for damages would be equivalent to a specific execution of the obligation. It might be that a judgment against the company would not be readily convertible into money."

The next case, most nearly akin to the present one, is that of *Chicago and Northwestern Railway Company v. People, ex rel. Hempstead*, 56 Ill. 365. That case presented features that were peculiar and unusual. It is manifest that for the injury there complained of, the law afforded no adequate redress, by any of its usual forms of action. In fact, the injured party could not have maintained any action, as we understand the facts. The wrong complained of was, that the defendant, railroad corporation refused to receive or transport grain that might be consigned to the grain-elevator owned by relator. The effect was to prevent consignments to him; and the extent to which this known regulation would deprive him of patronage could not be known. Hence, he had no adequate remedy at law, if indeed he had any remedy. If consignments had been made to him, and the railroad had, after receiving the freight, refused to deliver it according to its contract, express or implied, the relator—consignee—would have had an adequate remedy at law. That case and this are entirely dissimilar.

The other cases relied on are much less in point. They sought to redress a dereliction of duty—a disregard of an obligation to the public, in which the general public had an interest, while no one man had sustained a separate, individual injury, for which an action at law could be maintained.

[State, ex rel. Harrell, v. M. & M. Railway Co.]

See *State v. Hartford and New Haven R. R. Co.* 29 Conn. 538; *The King v. S. & W. Railway Co.* 2 Barn. &[Ald. 646; *Union Pac. R. R. Co. v. Hall,* 1 Otto, 343; *State v. Wil. Br. Co.* 3 Harrington, 312; *People, ex rel. v. State Im. Co.* 19 Mich. 392; *I. & C. R. R. Co. v. State, ex rel.* 37 Ind. 489; *State, ex rel. v. Treasurer, &c.* 45 Mo. 294.

The act of April 19th, 1873, referred to above, declares "that it shall not be lawful for any railroad company . . . to make any discrimination in the rates or charges for the transportation of freight," &c. It then provides that for the transportation of local freight, the railroad may "demand and receive not exceeding fifty per cent. more than the rate charged for the transportation of the same description of freight over the whole line of its road; and any railroad company, manager, agent or officer, violating the provisions hereof, shall be liable to the party injured thereby, in double the amount of the overcharge; but in no case shall the penalty be less than twenty dollars."

This statute furnishes a specific remedy for the wrong complained of, and affords ample, if not generous redress, to every one who suffers from excessive charges by the railroad. We think, with the circuit judge, that the remedy is adequate; and this, under all the authorities, forces us to deny the writ of *mandamus.*—2 Brick. Dig. 240, §§ 4, 5.

We can not assent to the argument that the fifty per cent. additional, which the statute allows the corporation to charge for transportation of local freight, means fifty per cent. on the charge over the whole line of the railroad, irrespective of the distance the local freight may be carried. The language of the statute forbids that construction. "Fifty per cent. more than the *rate* charged . . . over the whole line of its road," are the words of the statute. Rate is the emphatic word of the sentence. In this connection, it is employed in the sense of proportion—a standard of valuation; a rule, or measure of assessment. That is, an assessment according to a given standard. The charge for transportation over the whole line is so much, which is equivalent to so much per mile. Local freight must be carried at the same rate, *plus* fifty per cent. Thus, if the charge over the whole line be 100, the charge over half the line will be 50, plus 50 per cent.=25-100, added to 50, gives 75 as the result.

We are aware that this may operate very oppressively on the railway corporation, when the transportation is over a short section of the road. The remedy is not with us. It

is worthy of consideration if the statute should not be modified, so as to graduate the compensation by the labor, delay and risk necessarily incurred, which are little less, when the freight is carried ten miles, than when it is carried four-fifths of the entire line.

The Circuit Judge did not err in refusing the *mandamus,* and his judgment is affirmed.